John V. Picone, Esq. (State Bar No. 187226)
Jennifer S. Coleman, Esq. (State Bar No. 213210)
Cary Chien, Esq. (State Bar No. 274078)
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, California 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:   (408) 286-9800
Facsimile:   (408) 998-4790

Attorneys for Plaintiff
WISTRON CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WISTRON CORPORATION, a Taiwan Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington Corporation, MICROSOFT LICENSING GP; and MICROSOFT TECHNOLOGY LICENSING, LLC,<br><br>Defendants. | CASE NO. 5:16-cv-6037<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(1)  Breach of Contract**<br><br>**(2)  Breach of Covenant of Good Faith and Fair Dealing**<br><br>**(3)  Unfair Competition (Bus. & Prof. §17200)**<br><br>**JURY TRIAL DEMANDED** |

NOW COMES Wistron Corporation, a Taiwan corporation to allege against defendants Microsoft Corporation; Microsoft Licensing GP; and Microsoft Technology Licensing, LLC (hereinafter and collectively "Microsoft"), for its Complaint for Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, and for Other Relief, respectfully states as follows:

**SUMMARY OF THE ACTION**

1. This is a complaint for breach-of-contact by the defendants.

///

///

# PARTIES

2. Plaintiff Wistron Corporation is, and at all times mentioned herein was, a foreign corporation formed and existing under Taiwan law, with its principal place of business in Taipei, Taiwan. Wistron designs and manufactures computer systems and mobile devices.

3. Defendant Microsoft Corporation is a Washington corporation with its principal place of business in Redmond, in the State of Washington. Plaintiff is informed and believes and thereon alleges that defendant Microsoft Licensing GP is a Nevada general partnership based in Reno, in the State of Nevada. Plaintiff is informed and believes and thereon alleges that defendant Microsoft Technology Licensing, LLC is company based in the State of Washington. Plaintiff is informed and believes and thereon alleges that Microsoft is a worldwide business which makes and sells computer software, devices, and services.

# JURISDICTION AND VENUE

4. The Court has jurisdiction over this action under 28 U.S.C. § 1332; because the amount in controversy exceeds $75,000, excluding interest and costs, and this action is between Plaintiff, a citizen of Taiwan, and Defendants, citizens of the United States. Venue is proper within this District under 28 U.S.C. § 1391(b)-(d) because each defendant is subject to personal jurisdiction in this district, or has a regular and established place of business in this district. Under the terms of the contract at issue, Defendants have consented to jurisdiction and venue in this District.

# GENERAL ALLEGATIONS

**Google's Android Operating System**

5. In 2007, Google announced the development of the new Android operating system, an open source operating system intended for smart phones and other mobile devices. In 2008 the first device using Android was put on sale to the public. Today, Google's Android operating system is the most widely used mobile operating systems in the United States, with a market share of 59% according to a Katner market research report dated January, 2016.

///

///

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

743\1357619.9                    -2-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

6. On information and belief, Google has offered the Android operating system to most companies using an "open source" license agreement based on the Apache 2.0 Open Source License. Wistron is among the world's largest original design manufacture ("ODM") and makes mobile computing devices for its customers that uses the Android operating system. Wistron has licensed the Android operating system from Google in compliance with the terms of the Apache 2.0 Open Source License.

7. Upon information and belief, starting in 2009, Microsoft aggressively began to force companies designing, manufacturing, and selling products that use the Android operating system to take a license to Microsoft's patents, which Microsoft contended covered the technology that make up the Android operating system. Microsoft made a presentation in late 2009 to Wistron arguing for a patent licensing contract.

8. In October 2011, Microsoft announced that they had signed agreements with ten companies that designed, manufactured or sold Android-based devices, including the following companies: Samsung, HTC, Acer, ViewSonic, Onkyo, General Dynamics, Velocity Micro, Quanta Computer, Compal, and Wistron.

9. By 2014, one industry expert stated that Microsoft was receiving $5 to $15 for each Android device sold as a result of its numerous licensing fee agreements, even though Android was not invented at or by Microsoft, but instead was developed almost entirely by Google, which to this day, maintains the operating system as an open source and free platform and does not charge device manufacturers for its use.

10. Many companies and industry leaders viewed Microsoft's Android licensing strategy as overly restrictive and anti-competitive but nevertheless agreed to Microsoft's license in order to avoid litigation. One industry leader commented:

> *"The reality is that these patent trolls are unfortunately just part of doing business and technology these days. They're basically the alley thugs …. Personally, I'm just disappointed to see this from [Microsoft,] a former leader of our industry...."*

///

///

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

743\1357619.9                                                   -3-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

> Marc Benioff, Salesforce.com CEO (commenting that Microsoft's litigation against Barnes & Noble's and its Nook eReader is part of its larger campaign against open source software, including Android).

**Wistron Agrees to Manufacturer Android-based Devices for ASUSTek**

11.  In 2011 Wistron began manufacturing of various computer devices using the Android operating system for ASUSTeK, an original equipment manufacturer (hereinafter "ASUS"). These computer devices, which consisted of tablets, and mobile phones, were designed by ASUS and manufactured by Wistron and then sold by ASUS under its own brand. ASUS provided the product specifications and designs for Wistron to follow, which included using the Android operating system in the products.

**Wistron and Microsoft Sign Patent License Agreement**

12.  In July 2011, Wistron and Microsoft entered into a Confidential Patent License Agreement (hereinafter the "Microsoft-Wistron Agreement"). Wistron agreed to pay royalties to Microsoft in exchange for a license to use Microsoft patents in the manufacture of Wistron's Android-based products, including the ASUS products that Wistron was manufacturing. The agreement was for a term of five years. Neither the Microsoft-Wistron Agreement itself nor any addendums or exhibits to the same provided a list of the patents being licensed that Microsoft contended covered the Android operating system.

13.  The Microsoft-Wistron Agreement was the culmination of negotiations which began in 2009. Microsoft urged Wistron to license some of Microsoft's patents because they contended they had a portfolio of patents which covered the Android operating system (the "Microsoft Android patents"). During negotiations, Microsoft provided Wistron with a presentation which Microsoft represented showed a representative sample of 20 patents which Microsoft contended "cover mobile phones with Android." Specifically listed in this presentation by Microsoft were U.S. Patent Nos. 5,579,517 "Common Name Space for Long and Short Filenames," 6,826,762 "Radio Interface Layer in a Cell Phone with a Set of APIs Having a Hardware-Independent Proxy Layer and a Hardware-Specific Driver Layer," and 6,909,910 "Method and System for Managing Changes to a Contact Database."

Hopkins & Carley
Attorneys At Law
San Jose

743\1357619.9                          -4-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

14. The Microsoft-Wistron Agreement contains a clause titled "Duplicate Royalties" which reads as follows:

> 4.7 Duplicate Royalties. In the event that WISTRON knows that any specific Covered Product units are fully licensed under the terms of any other patent license agreement between MICROSOFT and a third party ("Third Party Licensee"), WISTRON will in its Royalty Report identify for each such Covered Product unit: (i) the Third Party Licensee, (ii) the brand name, (iii) the model number, (iv) the Covered Product category, (v) the number of such units Sold by WISTRON in the Royalty Period, and (vi) the fee paid by such Third Party Licensee. WISTRON shall have no obligation to pay MICROSOFT a second Royalty under this Agreement for any specific Covered Product units that are fully licensed by MICROSOFT under such other patent license agreement only if MICROSOFT has received full payment from the Third Party Licensee for such specific Covered Product units. Notwithstanding Sections 3.1 or 3.2 or anything in this Agreement to the contrary, no Covered Products units are licensed or covenanted under this Agreement unless full Royalties are received by MICROSOFT under this Agreement for such Covered Product units; such license or covenant, if any, will be provided by MICROSOFT under the terms of such other patent license agreement between MICROSOFT and such Third Party Licensee. Moreover, if MICROSOFT has not received full Royalties for such Covered Product units in a timely manner from such Third Party Licensee, WISTRON shall remain liable for Royalties owed for such Covered Product units and shall promptly pay MICROSOFT for such Royalties if invoiced by MICROSOFT after such Third Party Licensee has failed to timely pay MICROSOFT. If it is later determined that WISTRON has reported and inadvertently paid MICROSOFT a second Royalty after such Third Party Licensee has already fully paid for any such specific Covered Product units, MICROSOFT will issue WISTRON a credit in the amount of such second Royalty that shall be usable by WISTRON against future Royalties under this Agreement.

The key elements of this clause are that Wistron shall have no obligation to pay Microsoft royalties on products that "are fully licensed under the terms of any other patent license agreement between Microsoft and a third party" and that "such license or covenant, if any, will be provided by Microsoft."

15. In January 2016, Wistron and Microsoft renewed the Microsoft-Wistron Agreement with Letter Amendment #1 to Confidential Patent License Agreement (hereinafter the "Renewed License Agreement"). The Renewed License Agreement extended the term of the

///

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

743\1357619.9                           -5-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

agreement for an additional five years and amended some of its provisions. Relevant to this complaint specifically, Microsoft amended the Duplicate Royalties clause to read as follows:

> 4.7 Duplicate Royalties. In the event that WISTRON reasonably believes that any specific Covered Product units are fully licensed under the terms of any other patent license agreement between MICROSOFT or its Affiliates and a third party ("Third Party Licensee"), **such reasonable belief being based on more than the mere existence of a patent license agreement between MICROSOFT or its Affiliates and such Third Party Licensee**, WISTRON will in its Royalty Report identify for each such Covered Product unit: (i) the Third Party Licensee, (ii) the brand name, (iii) the model number, (iv) the Covered Product category, (v) the number of such units Sold by WISTRON in the Royalty Period, and (vi) the fee paid by such Third Party Licensee. WISTRON shall have no obligation to pay MICROSOFT a second Royalty under this Agreement for any specific Covered Product units that are fully licensed by MICROSOFT or its Affiliates under such other patent license agreement only if MICROSOFT or its Affiliates has received full payment from the Third Party Licensee for such specific Covered Product units. Notwithstanding Sections 3.1 or 3.2 or anything in this Agreement to the contrary, no Covered Products units are licensed or covenanted under this Agreement unless full Royalties are received by MICROSOFT under this Agreement for such Covered Product units; such license or covenant, if any, will be provided by MICROSOFT or its Affiliates under the terms of such other patent license agreement between MICROSOFT or its Affiliates and such Third Party Licensee. Moreover, if MICROSOFT or its Affiliates has not received full Royalties for such Covered Product units in a timely manner from such Third Party Licensee, WISTRON shall remain liable for Royalties owed for such Covered Product units and shall promptly pay MICROSOFT for such Royalties if invoiced by MICROSOFT after such Third Party Licensee has failed to timely pay MICROSOFT or its Affiliates. If it is later determined that WISTRON has reported and inadvertently paid MICROSOFT a second Royalty after such Third Party Licensee has already fully paid for any such specific Covered Product units, MICROSOFT will issue WISTRON a credit in the amount of such second Royalty ("Duplicate Payment Credit") that shall be usable by WISTRON against future Royalties under this Agreement. After the Term, if WISTRON has paid all outstanding Royalties and there are no future Royalties that will be owed by WISTRON, and if WISTRON has not fully used such Duplicate Payment Credit, then upon written request by WISTRON, MICROSOFT will fully refund to WISTRON the full amount of any unused remaining portion of such Duplicate Payment Credit within sixty (60) days after receipt of WISTRON's request.

(Emphasis added)

///

743\1357619.9   -6-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

16. The Duplicate Royalties clause comports with the long-established legal doctrine of patent exhaustion, also referred to as the first sale doctrine, which limits the extent to which patent holders can control an individual article of a patented product after a so-called authorized sale. In short, a patentee is not permitted to collect multiple royalties on a single product because the patentee's rights with respect to the patent is said to be "exhausted" upon the first authorized sale of the patented product. Wistron had a justifiable concern that due to the many licensing agreements Microsoft had signed with companies that do business with Wistron, there was an objective concern that Wistron would end up paying a license fee to Microsoft which another company had already paid. In effect, an overlapping patent licensing system could emerge whereby two companies were paying Microsoft patent licensing fees for the sale of the same product. The Duplicate Royalties clause protected Wistron from this eventuality.

**Microsoft Signs Patent License Agreements with ASUS**

17. On or around October 2015, Microsoft announced that it had entered into a patent licensing agreement with ASUS covering ASUS's sale of Android-based phones and tablets. The patent licensing agreement was announced by Microsoft as an expansion of an earlier patent licensing agreement which also covered Microsoft technologies (hereinafter "Microsoft-Asus Agreement"). The terms of Microsoft's agreements with ASUS have never been made public or disclosed to Wistron.

**Microsoft Demands Patent Royalties from Wistron**

18. In July 2013, Microsoft sent Wistron a letter demanding several million dollars to be paid pursuant to the Microsoft-Wistron Agreement. Microsoft claimed this royalties' fee was based upon sales of Android-based products that Wistron manufactured for and sold to ASUS.

19. Wistron immediately contacted ASUS and attempted to ascertain if the Android-based products Wistron had manufactured for ASUS were covered by a patent license agreement between ASUS and Microsoft. This was because, if Microsoft had a patent license agreement with ASUS, then Wistron would have no obligation to pay Microsoft under the Duplicate Royalties clause of the Microsoft-Wistron Agreement. ASUS responded by telling

///

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

743\1357619.9   -7-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

Wistron there was no need for Wistron to pay Microsoft and that ASUS would work with Microsoft to resolve the payment of the multi-million dollar royalty fee.

20. Therefore, based on representations made by ASUS to Wistron, Wistron had an objective reason to believe that there was a patent license agreement between ASUS and Microsoft. Wistron attempted to resolve the situation with Microsoft for half a year without success as Microsoft insisted that Wistron had to pay the full amount demanded. At various times during these negotiations, Microsoft intimated to Wistron that it either had, or was finalizing, a patent license with ASUS.  In October 2015, Microsoft announced that it "expanded" an existing patent license agreement that covered Android-based phones and tablets.  Despite the apparent existence of various patent licenses, some of which may cover products manufactured for ASUS, Microsoft has never provided Wistron with any portion of any patent license agreement with ASUS, proffering several different reasons for their refusal.

21. In late 2013, Microsoft sent a letter to Wistron which stated they would file suit in federal court if Wistron did not pay in full.

22. To avoid the litigation, in January of 2014, Wistron paid Microsoft the multi-million dollar licensing fee it demanded.

23. Since 2013, Wistron has requested that Microsoft explain why Microsoft's patents license agreement with ASUS did not relieve Wistron of its obligation to pay royalties to Microsoft under the terms of the Duplicate Royalties clause. Wistron has requested Microsoft to reveal the relevant terms of the Microsoft-Asus Agreement, as provided for by the Duplicate Royalties provision of the Microsoft-Wistron Agreement, so that Wistron can independently verify whether the Duplicate Royalties clause applies.  Thus far, Microsoft has failed to satisfy Wistron's reasonable requests.

**Microsoft Sues Motorola**

24. In October 2010, Microsoft filed suit against Motorola in federal court alleging infringement of certain Microsoft patents. Microsoft alleged in court filings that Motorola infringed on their patents through their sale of several types of Android-based devices. All told, Microsoft alleged infringement of 23 different U.S. patents, including patents 5,579,517

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

743\1357619.9
-8-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

"Common Name Space for Long and Short Filenames," 6,826,762 "Radio Interface Layer in a Cell Phone with a Set of APIs Having a Hardware-Independent Proxy Layer and a Hardware-Specific Driver Layer," and 6,909,910 "Method and System for Managing Changes to a Contact Database." These patents had been previously represented by Microsoft to Wistron as belonging to the family of patents which covered mobile phones using Android.

25. On January 4, 2011, Motorola announced that the company would split into two companies: Motorola Solutions and Motorola Mobility.

**Wistron Makes Android Devices for Motorola Solutions**

26. Following the formation of Motorola Solutions, Wistron began development of various hand-held computer devices using the Android operating system under contract with Motorola Solutions. These hand-held computer devices, intended for use in shipping and tracking deliveries were developed and manufactured by Wistron and then sold by Motorola Solutions under its own name. Motorola Solutions provided the product specifications for Wistron to follow, which included the use of the Android operating system.

**Microsoft Signs Patent License Agreements with Motorola Solutions**

27. On or around April 21, 2014, Microsoft and Motorola Solutions entered into a patent license agreement covering Android and other technologies (hereinafter the "Microsoft-Motorola Solutions Agreement").

**Microsoft Demands Additional Patent Royalties from Wistron**

28. In March 2016, Microsoft presented Wistron with a demand for a payment of more than a million dollars, stating this was for royalties owed by Wistron to Microsoft. A substantial portion of this fee was calculated based upon sales of Android-based products that Wistron manufactured for and sold to Motorola Solutions.

29. Wistron again requested that Microsoft explain why Wistron should pay royalties on products which were sold by a company that had a patent license agreement with Microsoft. Since Microsoft announced the Microsoft-Motorola Solutions Agreement, Wistron had an objective reason to believe the Duplicate Royalties provision should apply to the products Wistron manufactured and sold to Motorola Solutions. The overlap between the patents

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

743\1357619.9                                    -9-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

asserted by Microsoft against Motorola in 2010 and the patents that Microsoft represented to Wistron during the 2009 negotiations as covering Android technologies (U.S. Patent Nos. 5,579,517; 6,826,762; and 6,909,910) was further objective reason for Wistron to believe that the Microsoft-Motorola Solutions settlement covers the Android devices Wistron manufactured for Motorola Solutions. Thus far, Microsoft has failed to address Wistron's reasonable request.

**Google Settles With Microsoft**

30. On August 15, 2011, Google announced an agreement to purchase Motorola Mobility, one of the two successor companies to Motorola. On or around May 22, 2012, Google completed its purchase of Motorola Mobility.

31. On information and belief, as a result of the purchase of Motorola Mobility, Google owned part of the company which Microsoft sued in 2010 for patent infringement.

32. On September 30, 2015, Microsoft announced the termination of all pending legal actions undertaken against Google and its subsidiary Motorola Mobility relating to its alleged infringing use of Android technologies purportedly covered by Microsoft patents (hereinafter the "Microsoft-Google Agreement"). This was widely reported in the press as a settlement between Microsoft and Google because Google owned Motorola Mobility. The settlement was also reported as covering patents related to various technologies found in mobile computing devices.

33. The terms of the Microsoft-Google Agreement have never been revealed to the public, either at that time or later.

**Wistron's Efforts to Obtain Information about Microsoft-Google Agreement**

34. Since the announcement of the Microsoft-Google Agreement and based on the fact that Google is the creator and licenses the Android operating system to Wistron, Wistron has asked Microsoft to reveal, confidentially, the terms of the Microsoft-Google Agreement insofar as they related to Microsoft's licensing of their Android patents to both Google and Wistron. This effort was pursuant to the Duplicate Royalties provision of the Microsoft-Wistron Agreement. Wistron has a good-faith reason to believe that if Google has licensed the Microsoft Android Patents, then all or some of Wistron's use of the Android operating system for its

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

743\1357619.9 -10-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

clients such as ASUS and Motorola Solutions, is now covered by the Microsoft-Google Agreement such that Wistron has no obligation to pay duplicate royalties to Microsoft. Thus far, Microsoft has failed to address Wistron's reasonable request.

35. Microsoft has refused Wistron's reasonable requests to explain the effect of the Microsoft-Asus Agreement; the Microsoft-Motorola Solutions Agreement; and the Microsoft-Google Agreement on any Wistron royalty payment; even though such requests are fully in keeping with both the plain language and the intent of the "Duplicate Royalties" clause of the Microsoft-Wistron Agreement. Because Microsoft has signed patent licensing deals with so many companies that make or sell Android-based devices, it has essentially created a licensing thicket. Consequently, it is unclear how Wistron can avoid paying Duplicate Royalties to Microsoft without Microsoft's participation in sharing – confidentially – relevant agreements that Microsoft has made with third parties.

**FIRST CAUSE OF ACTION**
**(Breach of Written Contract)**

36. Plaintiff incorporates by reference the allegations of Paragraphs 1 through 35 as though fully set forth herein.

37. The Microsoft-Wistron Agreement was a valid contract, the consideration was adequate, and Wistron has performed except where performance has been excused by Microsoft's breach or otherwise as set forth above.

38. Defendants have breached the Microsoft-Wistron Agreement in that:

    a. They failed to reveal the relevant details of the Microsoft-Asus Agreement, insofar as they relate to Android devices manufactured by Wistron despite the clear language and intent of the Duplicate Royalties clause;

    b. They failed to reveal the relevant details of the Microsoft-Motorola Solutions Agreement, insofar as they relate to Android devices manufactured by Wistron despite the clear language and intent of the Duplicate Royalties clause;

///

///

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

743\1357619.9                                   -11-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

  c. They failed to reveal the relevant details of the Microsoft-Google Agreement or any other relevant third party license agreements, insofar as they relate to Android devices manufactured by Wistron despite the clear language and intent of the Duplicate Royalties clause.

39. As a direct and proximate result of Microsoft's breach of the Microsoft-Wistron Agreement, Plaintiff Wistron has suffered damages in an amount to be proven.

## SECOND CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing)

Plaintiff incorporates by reference the allegations of Paragraphs 1 through 35 as though fully set forth herein.

40. Defendants have breached the Covenant of Good Faith and Fair Dealing in that:

  a. Microsoft and Wistron entered into the Microsoft-Wistron Agreement;

  b. Wistron performed all of the significant terms under the Microsoft-Wistron Agreement, including the payment of royalties for the Android devices manufactured by Wistron;

  c. Wistron sought from Microsoft information to determine whether the Duplicate Royalties clause of the Microsoft-Wistron Agreement applied in light of the Microsoft-Asus Agreement, the Microsoft-Motorola Solutions Agreement, and the Microsoft-Google Agreement, insofar as they relate to the Android devices manufactured by Wistron;

  d. Microsoft unfairly interfered with Wistron's right to receive the benefits of the Duplicate Royalties provision of the Microsoft-Wistron Agreement by refusing to reveal pertinent details of its third-party patent license agreements with ASUS, Motorola Solutions, and Google;

41. Wistron has been damaged by Microsoft's many and varied refusals, which resulted in the payment of royalties to Microsoft that Wistron would have had no obligation to pay, in so far as the third party patent license agreements would have triggered the Duplicate Royalties clause of the Microsoft-Wistron Agreement. As a direct and proximate result of

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

743\1357619.9   -12-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

1  Microsoft's breach of the Microsoft-Wistron Agreement, Plaintiff Wistron has suffered damages
2  in an amount to be proven.

### THIRD CAUSE OF ACTION
### (Unfair Competition Bus. & Prof. § 17200)

42. Plaintiff incorporates by reference the allegations of Paragraphs 1 through 35 as though fully set forth herein.

43. Defendant Microsoft's actions constitute unlawful, unfair, and/or fraudulent business practices within the meaning of Business and Professions Code § 17200, et seq.

44. The aforementioned conduct include *inter alia:*

   a. Microsoft's demands of license fees based on its own belief that some products sold by Wistron require the payment of such a fee, without providing Wistron with the means to verify whether it is under an obligation to pay those fees;

   b. Microsoft practice of signing licensing agreements with multiple companies, collectively involved in the development of Android and Android-based products, such as Wistron, ASUS, Motorola Solutions, and Google, that only sell to other companies, and then demanding licensing fees from each company for the same product, in what amounts to duplicative royalties for a single instance of the licensed Android technology;

   c. Microsoft's refusal to disclose the details of other contracts which, had they been revealed, would have eliminated the obligation of Wistron to pay the licensing fees in sofar as they would have eliminated Wistron's obligation to pay a second royalty for a single product.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

### PRAYER

WHEREFORE, plaintiff prays for relief as follows:

1. For restitution in an amount of $10 million, or more according to proof;
2. For an injunction against Microsoft demanding further royalties from Wistron for products covered by third-party licensees;

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

743\1357619.9                                                -13-
COMPLAINT FOR DAMAGES (1) BREACH OF CONTRACT; (2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNFAIR COMPETITION (BUS. & PROF. §17200)

3. For costs of suit herein incurred;

4. For such other and further relief as the Court deems proper under the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable

Dated: October 18, 2016

HOPKINS & CARLEY
A Law Corporation


By: */s/ John V. Picone III*
John V. Picone III
Jennifer Coleman
Cary Chien
Attorneys for Plaintiff
WISTRON CORPORATION